**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JOSE DOMINGO RAMIREZ LARIO,

               Petitioner,

    v.

CRAIG LOWE, et al.,

               Respondents.

CIVIL ACTION NO. 1:25-CV-02345

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Jose Domingo Ramirez Lario ("Lario"), a Guatemalan citizen seeking lawful permanent residence in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On December 8, 2025, Lario filed the instant petition, requesting that Respondents Brian McShane, Todd Lyons, Kristi Noem, Pamela Bondi, and Craig Lowe ("Lowe")[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a). (Doc. 1, at

---

[1] The government asserts that pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. (Doc. 1, at 1 n.1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Lario is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 3); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Brian McShane, Todd Lyons, Kristi Noem, and Pamela Bondi are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Lario on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at \*9-\*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at \*22 (M.D. Pa. Nov. 13, 2025) (finding same).

1-2). Lowe filed a response to Lario's petition on December 19, 2025 (Doc. 4), and a supplemental response on February 11, 2026. (Doc. 10). For the following reasons, Lario's petition (Doc. 1) is **GRANTED,** and Lowe is **ORDERED** to release Lario from custody.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Lario's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 4). Lario is a citizen of Guatemala, who has lived in the United States for over seventeen years. (Doc. 1, at 2). Lario first entered the United States on October 30, 2008, without inspection or parole. (Doc. 1, at 2). Since entering the United States, Lario married a United States citizen, who he has two children with. (Doc. 1, at 8-9). Lario has an approved I-130 Petition for Alien Relative and I-1601A Application for Provisional Unlawful Presence Waiver.[2] (Doc. 1, at 9). Pursuant to his I-1601A Application, Lario awaits an immigrant visa interview at the U.S. Embassy in Guatemala. (Doc. 1, at 9).

On November 24, 2025, ICE encountered Lario at the Northampton County Magisterial District Court 03-2-04, after Lario plead guilty to two counts of disorderly conduct and was sentenced to fines/costs. (Doc. 4, at 14). ICE took Lario into custody without incident, and transported Lario to the Pike Enforcement and Removal Operations Office for processing. (Doc. 4, at 15). Lario was ultimately transferred to the Pike County Correctional

---

[2] Submitting an I-130 Petition for Alien Relative is the first step to help an eligible relative apply to immigrate to the United States and apply for a Green Card. U.S. Citizenship and Immigration Services, I-130, Petition for Alien Relative, https://www.uscis.gov/i-130 (last visited March 2, 2026). An I-1601A Application for Provisional Unlawful Presence Waiver allows immigrant visa applicants who are relatives of U.S. citizens or lawful permanent residents to request a provisional wavier of their unlawful presence grounds of inadmissibility before leaving the United States to appeal at a U.S. Embassy or Consulate for an immigrant visa interview. U.S. Citizenship and Immigration Services, I-601A, Application for Provisional Unlawful Presence Waiver, https://uscis.gov/i-601a (last visited March 2, 2026).

Facility, where he remains detained. (Doc. 4, at 15). The Executive Office for Immigration Review's case information indicates that Lario has an individual hearing on March 11, 2026, through the Elizabeth Immigration Court. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited March 2, 2026).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a

bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

## III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal,

4

the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Lario,* 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov,* 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil,* 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Lario and whether Lario is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings,* 583 U.S. at 294; *Kahlil,* 164 F.4th at 274-79. Lowe also concedes that the Court has subject-matter jurisdiction to rule on the merits of Lario's petition. (Doc. 10).

**IV.   DISCUSSION**

Lario contends that his mandatory detention under § 1225(b)(2)(A) is a violation of the INA and the Due Process Clause of the Fifth Amendment.[3] (Doc. 1, at 9-12). Lowe

---

[3] The Court notes that Lario also claims relief under the INA's bond regulations and the Administrative Procedure Act ("APA"). (Doc. 1, at 12-14). As the Court grants the Petition on the basis that Lario's detention is unlawful under the INA and violates his procedural due process rights, the Court declines to consider Lario's bond regulation and APA arguments at this time. *See Bethancourt Soto v. Soto,* No. 25-cv-16200, 2025 WL 2976572, at *9 n. 6 (D.N.J. Oct. 22, 2025); *see Demirel v. Fed. Det. Ctr. Phila.,* No. 25-5488, 2025 WL 3218243, at *5 (E.D.

counters that Lario is subject to mandatory detention because he falls squarely under § 1225(b)(2)(A), which Congressionally mandates the detention of noncitizens, like Lario, who are present in the United States without having been lawfully admitted. (Doc. 4, at 16, 35). The Court will first address whether Lario was properly detained under § 1225(b)(2)(A). The Court will then address whether Lario's detention violates due process.

A. LARIO WAS IMPROPERLY DETAINED UNDER 8 U.S.C. 1225(B), WHEN HE SHOULD HAVE BEEN DETAINED UNDER 8 U.S.C. § 1226(A).

Lario was improperly detained under 8 U.S.C. § 1225(b), when he should have been detained under 8 U.S.C. § 1226(a). Lario avers that noncitizens who have lived in the United States for years before ICE apprehended them are not "seeking admission" and are not subject to detention under § 1225(b)(2)(A). (Doc. 1, at 11). Lowe counters that Lario is properly detained under § 1225(b)(2)(A) because the statute mandates the detention of noncitizens, like Lario, who are present in the United States without lawful admission. (Doc. 4, at 16).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Lario*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering

---

Pa. Nov. 18, 2025); *see Kashranov*, 2025 WL 3188399, at *8; *see also Ramirez v. Jamison*, No. 2:25-cv-7346, 2026 WL 196474, at *19 (E.D. Pa. Jan. 26, 2026).

the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Lario, 29 I. & N. Dec. at 223*. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings,* 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov,* 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde,* 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov,* 2025 WL 3188399, at *6; *Soto,* 2025 WL 2976572, at *5 (collecting cases). The parties dispute whether Lario is still "seeking admission" to the United States. (Doc. 1, at 11-12; Doc. 4, at 18).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1);

*Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL 2985150, at *16 n. 7; *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[4] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained

---

[4] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court, and the Court declines to follow it here.

pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new practice, in which that all applicants for admission, regardless of when the noncitizen was apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited March 2, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Lario*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained

him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi,* 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 2025 WL 2976572 at *7 (collecting cases).

Section 1226(a), not § 1225(b)(2)(A), applies to Lario's detention. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez,* 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto,* 2025 WL 2976572, at *5 (collecting cases). Lario has lived in the United States for over seventeen years and has started a family in the United States with a United States citizen. (Doc. 1, at 8-9). Lario is not actively attempting to come into the United States; based on the plain meaning of the phrase "seeking admission," Lario sought admission when he entered the United States on October 30, 2008. (Doc. 1, at 8-9); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). A noncitizen, like Lario, who has established himself in the United States, making connections since his entry, is no longer at the "threshold of initial entry." *See Dept. of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 107 (2020); *see also Y-Z-L-H v. Bostock,* 792 F. Supp. 3d 1123, 1146 (D. Or. 2025). Section 1226(a) applies to applicants for admission, like Lario, who are not actively seeking admission but who have been residing in the United States for an extended period. *Cantu-Cortes,* 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399,

at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"). Accordingly, ICE improperly detained Lario under § 1225(b), when it should have detained him under § 1226(a).

B. LARIO'S DUE PROCESS RIGHTS WERE VIOLATED WHEN LOWE IMPROPERLY SUBJECTED HIM TO MANDATORY DETENTION.

Lowe's continued mandatory detention of Lario under § 1225(b)(2)(A) violates Lario's procedural due process rights. Lario avers that Lowe's mandatory detention of Lario constitutes due process violations. (Doc. 1, at 9-11). Lowe contends that as an immigration detainee, Lario has no constitutional right to release on bond when held pursuant to a statutory provision requiring mandatory detention. (Doc. 4, at 35-40).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Lario's favor because Lowe has deprived Lario of his physical liberty through improper detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfeld*, 542 U.S. 507,

11

529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas,* 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto,* 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Lario's favor because Lario remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto,* 2025 WL 2976572, at *8 (citing *Barrios v. Shepley,* No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi,* No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov,* 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Lario's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas,* 533 U.S. at 690; *Soto,* 2025 WL 2976572, at *8. Here, Lario poses no such risk to the government's interest in detaining him. Lowe does not allege that Lario poses a flight risk or danger to the community. (*See* Doc. 4). Further, Lario has demonstrated compliance with the immigration process by taking the steps necessary to obtain a Green Card to remain with his family in the United States. (Doc. 1, at 8-9). As each *Mathews* factor weighs in Lario's favor, his mandatory detention under § 1225(b) violates his

procedural due process rights. Accordingly, Lario's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Lario from custody.[5]

## V.    CONCLUSION

For the foregoing reasons, Lario's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Lario from custody. Lowe is also permanently enjoined from re-detaining Lario under § 1225(b). Lario may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

**BY THE COURT:**

**Dated: March 2, 2026**                    /s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**

---

[5] The Court notes that Lario also seeks relief in the form of attorney's fees and costs. (Doc. 1, at 15). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Lario must request attorney's fees in a separate motion with accompanying exhibits.